**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Andrew Terrey, | No. CV-17-01748-PHX-BSB |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Andrew Terrey seeks judicial review of the decision of the Commissioner of Social Security (the Commissioner) denying his application for benefits under the Social Security Act (the Act). The parties have consented to proceed before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b), and have filed briefs in accordance with Rule 16.1 of the Local Rules of Civil Procedure. The Court reverses the Commissioner's decision and remands for further proceedings.

**I.     Procedural Background**

On August 16, 2011, Administrative Law Judge (ALJ) Diana Weaver found that Petitioner was not disabled from August 14, 2009 to August 16, 2011. (Tr. 63-90.)[1] The Social Security Appeals Council denied review and on July 9, 2013 Plaintiff sought judicial review in the district court. (Tr. 81-86, 87-95.) On August 23, 2013, while review in the district court was pending, Plaintiff filed another application for social security benefits with an amended disability onset date of August 23, 2013. (Tr. 44, 197-

---

[1] Citations to Tr. are to the certified administrative transcript of record. (Doc. 11.)

206.) After the Social Security Administration (SSA) denied Plaintiff's second application and his request for reconsideration, he requested a hearing before an ALJ. After conducting a hearing, on October 30, 2015, ALJ Joan G. Knight found that Plaintiff was not disabled under the Act from August 23, 2013 to October 30, 2015. (Tr. 14-31.) The Social Security Administration Appeals Council denied review on April 7, 2017. (Tr. 1-3.) Plaintiff now seeks judicial review of ALJ Knight's 2015 decision pursuant to 42 U.S.C. § 405(g).

## II.  Administrative Hearing and Record

Plaintiff was twenty-five years old as of the amended disability onset date. (Tr. 41, 44.) He had graduated high school, where he received special education services, and obtained an associate's degree. (Tr. 41-48, 370.) Plaintiff worked at Blockbuster part-time for a year. (Tr. 49-51, 220, 233, 249.) Plaintiff alleges disability based on mental conditions. (Tr. 219.) The record before the Court includes medical treatment records and opinions related to Plaintiff's alleged mental impairments. The Court discusses the relevant evidence below.

### A.  Elementary School through High School

During elementary school and high school, psychologists, including Dr. Knotts, Dr. McGowan, and Dr. Lazowski, documented borderline intellectual functioning with full scale IQ scores of 71-81 and Plaintiff was placed in special education programs. (Tr. 305-11, 312-18, 319-27.) In twelfth grade, Dr. Lazowski conducted a working memory test, which showed that Plaintiff performed better than only 1% of his peers. (Tr. 315.) A processing speed test showed low average range scores. (*Id.*) Academic functioning tests showed math in the extremely low range. (Tr. 316.) In addition to a specific learning disability in math, Dr. Lazowski suggested that Plaintiff could be eligible for special education services for autism. (Tr. 317.) Dr. Lazowski recommended accommodations and that Plaintiff work with the Disabilities Resource Office at post-secondary school. (Tr. 317-18, 37.)

### B. Post High School Education and Work

After graduating high school in 2006, Plaintiff enrolled at Paradise Valley Community College where he took a reduced course load of six credit hours and was given additional time to take examinations. (Tr. 328, 370.) Plaintiff had difficulty with math and failed or withdrew from various classes. (Tr. 334-34, 357, 360, 404.) Plaintiff later worked part-time at Blockbuster as a customer service clerk. (Tr. 370, 335, 220.)

### C. Treatment at the Melmed Center

In 2009, Plaintiff saw Raun Melmed, M.D., a developmental pediatrician at the Melmed Center, for a developmental consultation. (Tr. 299-301.) Dr. Melmed noted Plaintiff's prior IQ scores and diagnosis of possible Asperger's disorder. (Tr. 300.) He observed that Plaintiff had difficulty processing complex information and found that Plaintiff had a "somewhat uneven" communication style and "tangential and circumstantial" thought process. (*Id.*) Dr. Melmed recommended psychological, neurological, and vocational rehabilitation evaluations, and that Plaintiff contact the Social Security Income (SSI) program. (*Id.*)

In February 2014, Mark Ruggeiro, M.D., a developmental pediatrician at the Melmed Center, noted that 2013 psychological tests showed that Plaintiff still had "significant developmental and intellectual challenges." (Tr. 411-12.) Dr. Ruggeiro noted that Plaintiff exhibited atypical social style and some cognitive rigidity, which were consistent with his early diagnosis of autism spectrum disorder. (Tr. 412.) Dr. Ruggeiro noted that Plaintiff would continue to need "significant" support in the future, including life coaching or counseling. *Id.*

Treatment notes from July 2014 show that Plaintiff had stopped attending college. (Tr. 469-70.) During September 2014 and March 2015, Dr. Ruggiero and Dr. Melmed continued to treat Plaintiff. Plaintiff still lived with his mom and was not pursuing a degree. (Tr. 457.) Dr. Ruggiero and Dr. Melmed recommended that Plaintiff receive ongoing vocational rehabilitation services (VRS) and counseling in life-skills and independent-living skills. (Tr. 465-68, 461-64, 457-60.)

### D. Vocational Rehabilitation Services

In late 2012 and early 2013, Plaintiff sought VRS to pursue work as an occupational therapy assistant (OTA) or in graphic design. (Tr. 364, 359-61, 357.) Based on Plaintiff's college performance, and because he failed the OTA program entrance exam, the VRS counselor questioned whether Plaintiff had the skills for the OTA program. (Tr. 359.) On referral from the VRS counselor, in April 2013, psychologist William Hixon performed a psychological/education/vocational evaluation of Plaintiff. (Tr. 369-77, 348-51.)

Dr. Hixon found "uneven" intellectual abilities with intellectual functioning scores in the low average range (full-scale IQ of 81), working memory in the extremely low range, perceptual reasoning/verbal comprehension in the low average range, processing speed in the average range, and math in the extremely low average range (5th grade). (Tr. 349-50, 372-76.) Plaintiff's ability to sustain attention, concentration, and exert mental control was in the extremely low range. (Tr. 350, 376.) Plaintiff performed tasks at a slower than normal rate (i.e., he took two hours to complete a test that usually took forty-five minutes to an hour to complete). (Tr. 372.) Dr. Hixon noted that Plaintiff's working memory was "significantly compromised," perhaps consistent with historical diagnoses of attention deficit hyperactivity disorder (ADHD) and pervasive developmental disorder. (*Id*.) Dr. Hixon opined that Plaintiff's "extremely low" working memory score was in a "critical" area of cognitive processing, represented an ongoing vocational and educational liability, and required psychiatric intervention. (*Id*.)

Dr. Hixon diagnosed pervasive developmental disorder not otherwise specified (NOS), provisional ADHD (primarily inattentive type), mathematics disorder, history of communication disorder NOS, and rule out autistic disorder (atypical). (Tr. 349, 375.) Dr. Hixon noted that Plaintiff's presentation and history were "highly" consistent with a pervasive developmental disorder. (Tr. 375.) He noted persistent ADHD-like symptoms. (*Id*.) Dr. Hixon encouraged post-secondary education with multiple accommodations.

(Tr. 350-51, 376-77.) For possible work, Dr. Hixon noted that an occupational therapy "aide" was more appropriate than an occupational therapy assistant. (*Id.*)

### E. Opinion Evidence

#### 1. Psychiatrist Dr. Sristi Nath

In 2009, psychiatrist Dr. Nath performed a consultative exam for the SSA. (Tr. 333-38.) Dr. Nath performed a mental status examination. (*Id.*) On examination, Plaintiff was able to register three out of three items, but was unable to recall any of the three items after five minutes. (Tr. 335.) Plaintiff could follow one-step commands. (*Id.*) Dr. Nath diagnosed anxiety disorder, NOS, and learning disorder, NOS. (*Id.*) Dr. Nath opined that Plaintiff could understand, remember, and carry out "very short simple instructions," make simple work-related decisions, ask simple questions, and maintain attention and concentration for brief periods of time. (Tr. 336.)

#### 2. Psychologist Dr. William Hixon

In 2013, Dr. Hixon found that Plaintiff had a pervasive developmental disorder and ADHD. (Tr. 375.) He opined that Plaintiff could remember assignments, locations, basic work tasks, and simple instructions, but he was prone to attention, concentration, and memory deficits. (Tr. 376-77, 350-51.) Plaintiff could comprehend and recall relevant facts, duties, and directions. (Tr. 351, 377.) However, he might experience "potential lapses" in those functions with more complex information. (Tr. 351, 377.) Dr. Hixon also opined that a "loss of efficiency" could occur with work that required frequent changes of tasks using different techniques, different procedures, or different degrees of attentiveness. (Tr. 351, 377.) Dr. Hixon further noted that "[w]ork situations that involve[d] interpersonal relationships beyond giving and receiving work instructions could be problematic," and that tasks "requiring precision and quality under tight timeframes might be difficult" for Plaintiff. (Tr. 351, 377.) Dr. Hixon opined that Plaintiff should avoid jobs that taxed his limited working memory and that required math skills. (Tr. 351, 377.)

### 3. Psychologists Janeen DeMarte, Ph.D.

In January 2014, psychologist Dr. DeMarte performed a consultative examination of Plaintiff. (Tr. 403-09.) Dr. DeMarte noted Plaintiff's recent results on cognitive and academic tests, including Plaintiff's deficits in recall and memory. (Tr. 405, 407.) Dr. DeMarte did not offer a cognitive disorder or learning disorder diagnosis because it was outside the scope of her evaluation. (Tr. 407.) Dr. DeMarte diagnosed "rule out" mathematics disorder. (*Id*.) She did not assess any functional limitations. (*Id*.)

### 4. Psychologists Elliot Salk, Ph.D. and Dr. Lazorwitz

In January 2014, non-examining psychologist Dr. Salk diagnosed "severe" autistic disorders. (Tr. 102.) Dr. Salk opined that Plaintiff could carry out one-to-two-step instructions, follow simple work-like procedures, and make simple work-like decisions. (Tr. 106.) In June 2014, Dr. Lazorwitz, a non-examining psychologist, concurred with Dr. Salk's January 2014 opinion. (Tr. 119-28.)

### 5. Developmental Pediatrician Dr. Ruggeiro

In February 2014, treating physician Dr. Ruggeiro opined that Plaintiff's intellectual disabilities, learning disorders, processing difficulties, and language challenges compromised Plaintiff's ability to function in a work setting. (Tr. 413.) Dr. Ruggeiro also opined that Plaintiff's atypical social style and challenges made him "vulnerable to everyday situations outside the home." (*Id*.) In June 2014, Dr. Ruggeiro assessed "mild" to "moderate" mental functional limitations. (Tr. 455-56.) Moderate was defined as being off-task 11-15% of an eight-hour day. (Tr. 456.)

In August 2014, Dr. Ruggeiro reassessed Plaintiff's mental functional abilities and found "mild" to "moderately severe" limitations. (Tr. 453-54.) Dr. Ruggeiro explained that Plaintiff's autism spectrum disorder was "unchanged," and that while medication and intervention could lead to improvement and progress over time in some behaviors, the underlying disorder would remain fairly constant. (Tr. 454.)

/ / /

### 6. **Developmental Pediatrician Dr. Melmed**

In March 2015, Dr. Melmed assessed "mild" to "moderately severe" mental functional limitations. (Tr. 473-74.) Dr. Melmed explained that Plaintiff's intellectual impairments and language learning disabilities made academic and vocational endeavors challenging. (*Id.*) He noted that Plaintiff had not worked since 2008, and that he had a "naive style, [was] atypical socially, and [had] a vulnerability suggesting need for supervision." (*Id.*)

## III. The Administrative Hearing

During the 2015 administrative hearing, Plaintiff described his academic difficulties. (Tr. 42-48.) He also testified that he had difficulty at a part-time job because he had problems with memory, concentration, and keeping up with the pace of work. (Tr. 49-51.) Plaintiff testified that he had difficulty with memory and recall, easily lost focus, needed constant reminders, performed tasks as a slower pace than others, and became stressed and over-reacted when he confronted problems. (Tr. 48-49, 51-53.) Plaintiff lived with his mom who assigned him simple chores, which he frequently forgot to do without being reminded. (Tr. 50, 55-57.) A vocational expert testified that work was precluded for an individual with the residual functional capacity (RFC) that the ALJ assessed. (Tr. 59.) The vocational expert also testified that work would be precluded for an individual who was off task 11-15% of the workday, as Dr. Melmed and Dr. Ruggiero assessed. (Tr. 59-60.)

## IV. The ALJ's Decision

A claimant is considered disabled under the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A) (nearly identical standard for supplemental security income disability insurance benefits). To determine whether a

claimant is disabled, the ALJ uses a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

### A. The Five-Step Sequential Evaluation Process

In the first two steps, a claimant seeking disability benefits must initially demonstrate (1) that he is not presently engaged in a substantial gainful activity, and (2) that his medically determinable impairment or combinations of impairments is severe. 20 C.F.R. §§ 404.1520(b) and (c), 416.920(b) and (c). If a claimant meets steps one and two, there are two ways in which he may be found disabled at steps three through five. At step three, he may prove that his impairment or combination of impairments meets or equals an impairment in the Listing of Impairments found in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. §§ 404.1520(a)(4)(iii) and (d), 416.920(d). If so, the claimant is presumptively disabled. If not, the ALJ determines the claimant's RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). At step four, the ALJ determines whether a claimant's RFC precludes him from performing his past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant establishes this prima facie case, the burden shifts to the government at step five to establish that the claimant can perform other jobs that exist in significant number in the national economy, considering the claimant's RFC, age, work experience, and education. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the government does not meet this burden, then the claimant is considered disabled within the meaning of the Act.

### B. The ALJ's Application of the Five-Step Evaluation Process

Before applying the five-step sequential evaluation process, the ALJ concluded that a prior ALJ's 2011 decision was "administratively final." (Tr. 14.) The ALJ stated that a final decision that a claimant is not disabled gives rise to a presumption of continuing non-disability. (*Id.*) To rebut that presumption, the claimant must prove "changed circumstances." (*Id.*) The ALJ further stated that even if the claimant rebuts the presumption of continuing non-disability, "*res judicata* requires adoption of the prior ALJ's findings . . . unless there is new and material evidence of a changed circumstance

relating to such a finding, or there has been a change in the law, regulations, or rulings affecting the finding or the method of arriving at the finding." (Tr. 15.) The ALJ found that *res judicata* applied because the new evidence Plaintiff offered did "not demonstrate changed circumstances relat[ed] to [the prior ALJ's] findings, nor had there been a change in the law, regulations, or rulings affecting the finding or method of arriving at the finding." (*Id.*) Therefore, the ALJ adopted the prior ALJ's 2011 findings. (*Id.*)

Specifically, at step one the ALJ adopted the prior finding that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date in 2009, and found that Plaintiff had not engaged in substantial gainful activity since the amended onset date of August 23, 2013. (Tr. 17.) At step two, the ALJ adopted the prior finding that Plaintiff had the following severe impairments: "attention deficit hyperactivity disorder (ADHD), autism, and obsessive-compulsive disorder (OCD) (20 CFR 416.920(c))." (*Id.*) The ALJ adopted the prior finding that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment. (*Id.*) The ALJ adopted the prior finding that Plaintiff had the RFC to "perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant is limited to simple and unskilled work and his work must be checked by a supervisor two to three times a day." (Tr. 19.)

The ALJ adopted the prior finding that Plaintiff had no past relevant work. (Tr. 29.) The ALJ also adopted the prior finding that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (*Id.*) In adopting this finding, the ALJ relied on the vocational expert's testimony from the 2011 hearing, and did not discuss the vocational expert's testimony from the 2015 hearing. (Tr. 29, 59.) The ALJ determined that Plaintiff had not been under a disability, as defined in the Act, from August 23, 2013 through the date the application was filed. (Tr. 30.) Therefore, the ALJ denied Plaintiff's application for supplemental security income. (Tr. 31.)

## V. Plaintiff's Claims

Plaintiff initially argues that the ALJ erred by applying *res judicata* principles because the prior ALJ's 2011 decision was not final at the time of the ALJ's 2015 decision. (Doc. 12 at 9-11.) Plaintiff alternatively argues that, even if *res judicata* applied, the ALJ erred for the following reasons: (1) the ALJ's finding that Plaintiff failed to rebut the presumption of continued disability is not supported by substantial evidence; (2) the ALJ erred by finding Plaintiff not disabled based on credited medical opinions that supported a finding of disability; (3) the ALJ erred by rejecting the opinions of treating physician Dr. Ruggiero; and (4) the ALJ erred by rejecting Plaintiff's symptom testimony. (Doc. 12 at 11-25.) The Commissioner asserts that the ALJ's decision is free from harmful error and is supported by substantial evidence. (Doc. 17.)

### A. Administrative *Res Judicata*

The principles of *res judicata* apply to administrative proceedings. *Chavez v. Bowen*, 844 F.2d 691, 692-93 (9th Cir. 1988) (holding that *res judicata* applies "less rigidly" in administrative proceedings than in judicial proceeding and outlining the rules for *res judicata* in social security cases); *Taylor v. Heckler*, 765 F.2d 872, 875-76 (9th Cir. 1985) (*res judicata* applies to the Commissioner's final decisions regarding disability; a decision denying benefits becomes binding on all parties and creates presumption of continuing nondisability). Under these principles, an ALJ's prior final decision that a claimant is not disabled gives rise to a presumption of continuing non-disability that applies to a subsequent claim. *Chavez*, 844 F.2d at 692-93.

A claimant may rebut the presumption by showing "changed circumstances." *Taylor*, 765 F.2d at 875. To establish changed circumstances, a claimant may show that his physical or mental condition has worsened. *Id*. A claimant may also show "other changes" including a change in his age category, or the existence of an impairment that was not considered in the previous application. *Id*. When a claimant rebuts the presumption, "some *res judicata* consideration" still applies, unless there is "new information" that was not presented to the prior ALJ. *Chavez*, 844 F.2d at 694 (stating

- 10 -

that claimant's attainment of "advanced age" status was a "changed circumstance" that precluded the application of *res judicata* to the first ALJ's "ultimate finding against disability," but applying "some *res judicata* consideration" to the first ALJ's findings "concerning the claimant's [RFC], education, and work experience.").

### 1. The Commissioner Admits Error

In her 2015 decision, the ALJ stated that the prior ALJ's 2011 decision was "administratively final" and thus gave rise to a presumption of continuing non-disability under principles of *res judicata*. (Tr. 14.) However, the ALJ acknowledged that the 2011 decision was pending review in the Ninth Circuit Court of Appeals at the time of her 2015 decision. (*Id*.) Plaintiff argues that because the prior ALJ's 2011 decision was still on appeal before the Ninth Circuit at the time of the ALJ's 2015 decision, the ALJ erred by determining that the 2011 was a final and binding decision. (Doc. 12 at 9-10); *see* 20 C.F.R. § 416.1455(b) (stating that the decision of the ALJ is binding unless the claimant or another party seeks review in a federal district court); § 416.1481 (stating that the "Appeals Council's decision, or the decision of the [ALJ] if the request for review is denied, is binding unless [claimant] or another party file an action in Federal district court, or the decision is revised.").

The Commissioner agrees that "it was error for the ALJ to conclude that the 2011 decision was final and binding in 2015." (Doc. 17 at 3; *see* Tr. 103 (statement by Agency consultant Dr. Salk that "*Chavez* . . . [did] not apply because case [had] been taken to higher court.").)[2] Because the Commissioner admits that the ALJ erred by concluding that the prior ALJ's 2011 decision was final and binding at the time of the ALJ's 2015 decision, the Court finds that the ALJ erred in this regard and does not further consider the issue.

/ / /

---

[2] A different agency consultant, Dr. Lazorwitz, found *Chavez* applicable. (Tr. 119, 127-28.) But that conclusion was based on an incorrect statement of the facts. Dr. Lazorwitz stated the prior ALJ decision was dated May 13, 2010, but it was actually dated August 16, 2011. (Tr. 76, 119, 128.) He also stated that on July 9, 2013, a federal court denial was issued, but the case was actually appealed on that date. (Tr. 119, 87-95.)

### 2. The Error was Harmful

When an ALJ has committed legal error, "[r]eversal on account of error is not automatic, but requires a determination of prejudice." *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)). "Where harmfulness of the error is not apparent from the circumstances the party seeking reversal must explain how the error caused harm." *McLeod v. Astrue*, 640 F.3d 881, 887 (9th Cir. 2011).

"Where the circumstances of the case show a substantial likelihood of prejudice, remand is appropriate so that the agency can decide whether re-consideration is necessary. By contrast, where harmlessness is clear and not a borderline question, remand for reconsideration is not appropriate." *Id.* at 888. Courts have "affirmed under the rubric of harmless error where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

In sum, "ALJ errors in social security cases are harmless if they are 'inconsequential to the ultimate nondisability determination' . . . ." *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (quoting *Stout*, 454 F.3d at 1055-56). To determine whether an error was harmless, the court may consider "the likelihood that the result would have been different" and "the impact of the error on the public perception of such proceedings." *Ludwig*, 681 F.3d at 1054.

Plaintiff argues that the ALJ's inappropriate application of *res judicata* principles, based on her conclusion that the prior ALJ's 2011 decision was final, was harmful error. (Doc. 12 at 10.) The Commissioner argues that the error was harmless because the 2011 decision ultimately became final in 2017. (Doc. 17 at 3 (citing *Terrey v. Berryhill*, 2017 WL 3635558 (9th Cir. Aug. 24, 2017).) The Commissioner asserts that the error was harmless because "while it was error for the ALJ to conclude that the 2011 decision was

- 12 -

final and binding in 2015, it would not be error today." (Doc. 17 at 3.) The Commissioner's argument is based on events that happened *after* the ALJ's 2015 disability determination in which the ALJ made the error at issue. Thus, the Commissioner's argument is based on the premise that the assessment of whether an error that an ALJ made when making a disability determination is harmful includes consideration of events that occurred after the ALJ made that disability determination. The Commissioner does not cite any authority for that proposition. Additionally, the Commissioner's argument does not address whether the ALJ's error in the 2015 disability determination was nonprejudicial to Plaintiff or irrelevant to the ALJ's disability determination. *See Stout*, 454 F.3d at 1055.

The Court finds that the ALJ committed harmful error. The ALJ's conclusion that the prior ALJ's 2011 decision was final resulted in the application of *res judicata* principles, including a presumption of nondisability, which would not have otherwise applied. Applying principles of *res judicata*, the ALJ "adopted the prior findings from the ALJ decision of August 16, 2011" at all five steps of the sequential evaluation process. (Tr. 17, 19, 29.) Specifically, she adopted the 2011 findings that Plaintiff had no prior substantial gainful activity, he had "severe" impairments including ADHD, autism, and OCD, and that Plaintiff had no impairments that met or equaled the severity of a listed impairment. (Tr. 17.) The ALJ also adopted the prior ALJ's 2011 findings that Plaintiff had the RFC for simple and unskilled work with supervisory work-checks two to three times a day at all exertional levels, that Plaintiff had no past relevant work, and that Plaintiff had the ability to perform work as an industrial cleaner, driver helper, and kitchen helper. (Tr. 19, 29-30.) The ALJ's conclusion that Plaintiff could perform those representative jobs was based on the RFC that she adopted from the 2011 decision, and the testimony of the vocational expert during the 2011 administrative hearing. (Tr. 29-30.)

From the record before the Court, it appears that during the 2011 administrative hearing, the vocational expert testified that some work may be available for an individual

with Plaintiff's assessed RFC limitations.[3] (Tr. 69 (2011 RFC assessment), Tr. 74 (identifying representative jobs that the vocational testified could be performed by an individual with claimant's age, education, work experience, and RFC).) A different vocational expert testified at the 2015 administrative hearing.[4] (Tr. 59.) In contrast to the vocational expert's testimony at the 2011 administrative hearing, the vocational expert at the 2015 administrative hearing testified that work was precluded for an individual with the RFC that the ALJ had adopted from the prior ALJ's 2011 decision. (*Id*.) Specifically, at the 2015 administrative hearing, the vocational expert testified that no work was available for an individual who needed to have his work checked by a supervisor two to three times a day on an ongoing basis. (*Id*.) The ALJ did not ask the vocational expert about the conflict between his testimony and the vocational expert's testimony at the 2011 hearing. (Tr. 29-30, 59-61.) Additionally, in her 2015 decision, the ALJ only discussed the testimony of the vocational expert at the 2011 administrative hearing and did not discuss the vocational expert's testimony from the 2015 administrative hearing. (Tr. 30.)

Considering the difference between the vocational experts' testimony during the 2011 and the 2015 administrative hearings, the ALJ's failure to address that difference, and the 2015 vocational expert's testimony supporting a finding of disability, the Court cannot "confidently conclude" that the ALJ's decision would have been the same if the ALJ had not given *res judicata* effect to the prior ALJ's decision. Therefore, the error was harmful.[5] *See Ludwig*, 681 F.3d at 1054; *Robbins v. Social Security Admin.*, 466 F.3d 1050, 1055-56 (9th Cir. 2006).

---

[3] The administrative record does not include the transcript of the prior 2011 administrative hearing (*see* Doc. 11, Court Transcript Index), but does include the ALJ's 2011 decision. (Tr. 66-75.)

[4] Vocational expert Scott K. Nielson, Jr. testified at the 2011 hearing. (Tr. 66.) Vocational expert Mark J. Kelman testified at the 2015 hearing. (Tr. 14.)

[5] Having found harmful error, the Court does not consider Plaintiff's remaining, alternative arguments.

### B. Remand for Further Proceedings is Appropriate

Plaintiff seeks an order remanding for an award of disability benefits. (Doc. 12 at 25.) When an ALJ errs in denying benefits, the court generally has discretion to remand for further proceedings. *See Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). When no useful purpose would be served by further administrative proceedings, however, or when the record has been fully developed, it is appropriate under the "credit-as-true" rule to direct an immediate award of benefits. *See id.* at 1179 (noting that "the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"); *Garrison v. Colvin*, 759 F.3d 995, 1019-20 (9th Cir. 2014).

Under the credit-as-true framework, the court may remand to the ALJ with instructions to award benefits if: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison*, 759 F.3d at 1020. When, however, the ALJ's findings are "insufficient" and the court cannot determine whether the rejected testimony should be credited as true, the court has "some flexibility" in applying the credit-as-true rule. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003); *see also Garrison*, 759 F.3d at 1020 (noting that *Connett* established that credit-as-true rule may not be dispositive in all cases). The court should not remand for benefits "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Garrison*, 759 F.3d at 1021. Additionally, when there are outstanding issues that must be resolved and it is unclear from the record whether the ALJ would find the claimant to be disabled, remand is appropriate. *See id.* at 1020.

In this case, the ALJ applied a presumption of continuing non-disability and did not discuss the vocational expert's testimony from the 2015 administrative hearing, which supports a conclusion that Plaintiff is disabled based on the RFC that the ALJ

adopted from the 2011 decision. Allowing further proceedings will permit the ALJ to consider the vocational expert's 2015 testimony and to consider the entire record and make a proper disability determination. On remand, the ALJ shall reassess whether Plaintiff is disabled without giving *res judicata* effect to the 2011 decision. *See Manning v. Colvin*, 2015 WL 1457767, at *5 (C.D. Cal. Mar. 30, 2015) (finding that the ALJ erred in applying *res judicata*, remanding for further proceedings, and directing the ALJ to reassess the issue of disability without giving *res judicata* effect to the prior decision).

Accordingly,

**IT IS ORDERED** that the Commissioner's decision denying benefits is **REVERSED** and this matter is remanded for further proceedings consistent with this Order.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment in favor of Plaintiff and terminate this case.

Dated this 7th day of August, 2018.

_____
Bridget S. Bade
United States Magistrate Judge